```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Cora M. Peterson,                   :

      Plaintiff,             : Case No. 2:15-cv-2317

  v.                                : CHIEF JUDGE EDMUND A. SARGUS, JR.
                                       Magistrate Judge Kemp
Commissioner of Social Security,

      Defendant.             :

### REPORT AND RECOMMENDATION

### I. Introduction

Plaintiff, Cora M. Peterson, filed this action seeking review of a decision of the Commissioner of Social Security denying her applications for disability insurance benefits and supplemental security income. Those applications were filed on April 9, 2013, and alleged that Plaintiff became disabled on January 1, 2009 (later amended to July 1, 2013).

After initial administrative denials of her claim, Plaintiff was given a video hearing before an Administrative Law Judge on February 24, 2015. In a decision dated March 17, 2015, the ALJ denied benefits. That became the Commissioner's final decision on April 9, 2015, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on August 7, 2015. Plaintiff filed a statement of specific errors on September 5, 2015, to which the Commissioner responded on December 7, 2015. Plaintiff filed a reply brief on December 21, 2015, and the case is now ready to decide.

### II. The Lay Testimony at the Administrative Hearings

Plaintiff, who was 40 years old as of the date of the hearing and who has an eleventh grade education, testified as follows. Her testimony appears at pages 35-55 of the

administrative record.

Plaintiff testified that her last job was at a pizza shop. She both cooked and made deliveries. She lifted boxes of dough that weighed up to 80 pounds and also drove all over the Wheeling area. On January 1, 2009, she suffered an ankle injury while delivering a pizza, and she injured her knee in 2013. Other past jobs included working at other pizza restaurants and some other part-time work as well.

In November of 2013, Plaintiff had arthroscopic surgery on her right knee. It still locks up when she sits a certain way and she has fallen several times. She had COPD and asthma as well, and recently quit smoking. She weighed 265 pounds at the time of the hearing. Plaintiff testified to having a heart problem with 50% blockage and to being diagnosed with anxiety and depression. She took medication for pain, for anxiety and depression, for high cholesterol, and for her breathing problems. She was not seeing a counselor or psychiatrist.

The pain Plaintiff suffered from was primarily in her right knee and left ankle. She could not walk on uneven ground and could not stand for very long, nor could she bend her knees to squat. She could sit all day as long as she could keep her knee straight. Plaintiff took care of her personal needs and cooked for her family. She also did dishes. Most of the day, she sat with her leg elevated and either watched television or played video games. She did not do laundry because she could not navigate the steps to the basement. She had no social activities. Finally, she testified that small amounts of stress could trigger a crying spell and that she had problems with concentration and memory.

### III.  The Medical Records

The medical records in this case are found beginning on page 442 of the administrative record. The pertinent records -

basically, those cited either by Plaintiff or by the Commissioner in their memoranda - can be summarized as follows.

### A.  Psychological Conditions

There are no records indicating that Plaintiff was seen by a mental health professional.  The three sources of evidence about her psychological conditions and any associated limitations are the consultative examination, notes from the treating nurse practitioner, and the state agency psychologists.  The Court will describe each in turn.

On July 8, 2013, David R. Bousquet, M.Ed., performed a psychological evaluation.  He noted that Plaintiff described her disabling conditions as including both multiple medical problems and depression and anxiety.  She described a fairly troubled childhood, including incidents of abuse, and indicated she had been in state institutions for a portion of her childhood.  She experienced social difficulties in school and was suspended for fighting.  She was working part-time as of the date of the evaluation and said she had problems dealing with co-workers and supervisors, and had also been fired from a prior job due to a "poor attitude."  Plaintiff reported other past firings as well.  She had gone through counseling in the past but felt it had not helped her.  She said that she overate when stressed and had racing thoughts which kept her awake at night.  She was depressed and tearful and reported low energy and irritability.  She also reported anxiety attacks and hypervigilance when in public, as well as problems with memory and concentration.  She was able to care for her family, with some assistance, and watched television and made bracelets as a hobby.  Mr. Bousquet noted that Plaintiff displayed both a depressed and an anxious mood and was restless and fidgety during the examination.  She demonstrated difficulty attending to and concentrating on tasks given to her.  Mr. Bousquet diagnosed bipolar disorder, chronic post-traumatic

stress disorder, and personality disorder with borderline features. He rated her symptom and overall GAF at 50 and her functional GAF at 60, and concluded that her self-reported data appeared reliable; that she could understand, remember, and carry out instructions consistent with someone of average intelligence; that she would have difficulties maintaining attention and concentration as well as persistence and pace, but she could do simple and multi-step tasks; that she would be expected to have some difficulties with social interactions in the work setting; and that she would also have difficulty responding to workplace stress and pressure. (Tr. 572-80).

 Plaintiff was prescribed medication for depression and anxiety by her regular physician. Nurse Practitioner Morgan completed a form on May 21, 2013, indicating, among other things, that Plaintiff could not tolerate stress or engage in rapid decision-making and that she had difficulty coping and staying on task. (Tr. 556-61). She completed a similar form on June 19, 2014. (Tr. 687-93). A diagnosis of anxiety also appears in the treatment notes.

 Lastly, Dr. Warren, one of the state agency psychologists, expressed the view on July 26, 2013, that Plaintiff suffered from affective, anxiety, and personality disorders and that she had limitations in the areas of sustaining concentration and persistence, maintaining attention and concentration for extended periods, performing within a schedule, working in proximity to others, and completing a workday and workweek without interruption from psychologically-based symptoms. Dr. Warren thought Plaintiff had a marked impairment in dealing with the general public and a moderate impairment in her ability to relate to co-workers and supervisors, and said that Plaintiff could "perform optimally in a nonpublic setting where close interaction with coworkers and supervisors is not required." She also

identified moderate limitations in the ability to react to changes in the work setting and a marked limitation in the ability to travel in unfamiliar places or use public transportation. (Tr. 80-83). Dr. Zwissler, the second state agency reviewer, reached the exact same conclusions. (Tr. 123-25).

### B. Physical Conditions

Plaintiff's statement of errors cites to only a few records relating to her physical condition. She points to records from 2011-2013 documenting conditions including osteoarthritis of multiple joints, and pain in her ankles, knees, hips, and shoulders. Dr. Zilles began treating her in October, 2013. His first office note indicated that Plaintiff was undergoing physical therapy and had experienced increased pain, and noted that she had twisted her knee in July, 2013. Examination revealed crepitus, swelling, tenderness, and "catching locking pain" in the right knee. Dr. Zilles diagnosed knee sprain and osteoarthritis, and indicated surgery might be necessary. (Tr. 664-66). He did subsequently perform arthroscopic surgery, but Plaintiff complained of post-operative pain and stiffness during physical therapy. She still had swelling in her right knee in June, 2014. (Tr. 674). Nurse Practitioner Morgan, who also expressed views about Plaintiff's psychological limitations, noted restrictions on Plaintiff's ability to stand, sit, and walk during the work day which precluded full-time employment. A state agency physician, Dr. Manos, thought that Plaintiff could do a limited range of medium work, and Dr. Sethi, the consultative physical examiner, thought she had only slight restrictions in her ability to sit, stand, walk, carry, and lift. (Tr. 582-84).

### IV. The Vocational Testimony

Linda L. Dezack was called to testify as a vocational expert

at the administrative hearing. Her testimony begins at page 54 of the administrative record.

Ms. Dezack described Plaintiff's past employment as a driver as a medium strength unskilled job. When she worked as a pizza baker, she did medium skilled work.

Ms. Dezack was then asked some questions about someone with Plaintiff's background and who could work at the medium exertional level. That person could only occasionally climb ladders, ropes, or scaffolds and had environmental limitations concerning exposure to extremes of temperature and humidity as well as fumes, odors, dust, gasses, and poor ventilation. Ms. Dezack said that someone with those restrictions could not perform Plaintiff's past relevant work because it involved exposure to extremes of temperature.

Next, Ms. Dezack was asked to consider someone who could do light work and who could climb ramps and stairs occasionally but never ladders, ropes, or scaffolds. The person could occasionally balance, stoop, kneel, or crouch, but never crawl. He or she also had the same environmental restrictions as in the prior hypothetical. Additionally, that person was limited to simple, routine, unskilled work activity. Ms. Dezack said that such a person could work as a waitress, cafeteria attendant, or fountain server. At the sedentary exertional level, there would be jobs like food and beverage order clerk, mail sorter, and document preparer. Finally, Ms. Dezack answered some questions which assumed either the capacity for only part-time work or for being attentive for only two-thirds of the work day, limitations she said were work-preclusive, as was missing work four times per month or being unable to stoop at all.

V. <u>The Administrative Law Judge's Decision</u>

The Administrative Law Judge's decision appears at pages 9-21 of the administrative record. The important findings in that

decision are as follows.

The Administrative Law Judge found, first, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2009. Going to the second step of the sequential evaluation process, the ALJ concluded that Plaintiff had severe impairments including history of right rotator cuff injury, osteoarthritis of the left ankle and foot, chronic obstructive pulmonary disease, asthma, osteoarthritis of the right knee, status post chrondroplasty, obesity, depression, anxiety/post-traumatic stress disorder, and personality disorder. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to step four of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional capacity to perform light work with limitations. She could climb ramps and stairs occasionally but never ladders, ropes, or scaffolds, could occasionally balance, stoop, kneel, or crouch, and had to avoid concentrated exposure to temperature extremes, humidity, fumes, odors, dusts, gases and poor ventilation. Additionally, she was limited to simple, routine, unskilled work activity.

With these restrictions, the ALJ concluded that although Plaintiff could not perform her past relevant work, she could perform the light jobs identified by the vocational expert, including waitress, cafeteria attendant, and fountain server, and the sedentary jobs as well. The ALJ further determined that these jobs existed in significant numbers in the regional and national economies. Consequently, the ALJ decided that Plaintiff was not entitled to benefits.

VI. <u>Plaintiff's Statement of Specific Errors</u>

In her statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate Plaintiff's

psychological limitations; and (2) the ALJ did not properly identify Dr. Zilles as a treating source and evaluate his opinion accordingly.  These issues are evaluated under the following legal standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  Psychological Limitations

Plaintiff first asserts that the ALJ did not properly evaluate her psychological limitations.  In particular, she argues that all of the sources who expressed opinions on this

issue, including the consultative examiner, Mr. Bousquet, the two state agency reviewers, and the treating nurse practitioner, described limitations which went beyond the single psychological restriction included in the ALJ's residual functional capacity. She focuses specifically on the impairment in concentration, persistence, and pace noted by all of these sources, pointing out that a restriction to the performance of simple, routine tasks does not account for this impairment, and noting that the ALJ's own decision is inconsistent on this issue because he found that she suffered from moderate limitation in concentration, persistence, and pace, but did not factor that finding into his residual functional capacity determination.

In making that determination, the ALJ explained, first, that Plaintiff's activities of daily living - driving a car, home schooling her children, cooking, doing dishes, playing video games, caring for pets, shopping, paying bills, and watching television, among others - were "inconsistent with debilitating physical and mental impairments." (Tr. 15). He also noted - incorrectly, according to Plaintiff, based on her amended onset date - that she had continued to work, although not at the substantial gainful activity level, after her claimed onset date. Turning to the opinion evidence, the ALJ first summarized Mr. Bousquet's evaluation and then discussed his view, and the view of the state agency psychologists, together. The ALJ dissected those opinions, giving great weight to the opinion which limited Plaintiff to unskilled work, little weight to the opinion that she had difficulties with activities of daily living and with social functioning, and little weight to Mr. Bousquet's conclusion that Plaintiff should avoid stressful situations. The ALJ explained that these latter limitations were contradicted by Plaintiff's ability to hold a job that required her to interact with the public and her activities of daily living, which the ALJ described as "not significantly limited." (Tr. 19). The ALJ

also concluded that because Plaintiff was still able to drive, play video games, pay bills, and work part-time, she did not have any problems dealing with stressful situations.

The Commissioner argues that imposing only a limitation to simple, unskilled work is a decision supported by the record. According to the Commissioner, all of the opinion evidence supported the finding that such a limitation accounted for Plaintiff's difficulties in the areas of concentration, persistence, and pace. The Commissioner also contends that the ALJ was justified in rejecting any limitations on interaction with the public on the ground that Plaintiff was able successfully to work despite her mental impairment for many years, and there was no evidence that her condition worsened after she stopped working in July, 2013 due to a knee injury. Plaintiff replies that the ALJ simply failed to apply the restrictions which were imposed in all of the opinion evidence, and that there is no support for the conclusion that her only restriction related to the performance of unskilled work.

Plaintiff clearly has the better of this argument. First, although the opinion evidence does limit Plaintiff to simple, routine tasks - essentially unskilled work - all of the opinions also support additional limitations, including, as the state agency reviewers noted, a nonpublic setting not requiring close interaction with others. That restriction, and the finding of not just moderate but marked limitations in Plaintiff's ability to deal with others, is supported by her history of having been fired from numerous jobs due to issues with her anger and her attitude.

Second, it is not a fair reading of the opinions that by restricting Plaintiff to simple tasks, any issues with concentration, persistence and pace - issues observed directly by Mr. Bousquet during his interview with Plaintiff, and confirmed by the state agency reviewers - were thereby fully accommodated.

-10-

Rather, a fair interpretation of the record (that is, the interpretation which is supported by substantial evidence) is that Plaintiff's cognitive abilities limited her to simple (and perhaps some complex) tasks, but she also required some type of accommodation for her evident deficiencies in the area of attention and concentration, including minimizing distractions from co-workers, a portion of the opinion evidence the ALJ declined to accept. Given the way in which the opinion evidence characterized this limitation, it was simply not accounted for in the ALJ's residual functional capacity determination. See, e.g. Ealy v. Comm'r of Social Security, 594 F.3d 594 (6th Cir. 2010). As in that case, the ALJ here did not incorporate any speed or pace-based restrictions into his residual functional capacity finding, but that decision is not supported by the record. His observation that Plaintiff's activities of daily living do not support the existence of debilitating psychological limitations is not pertinent, since speed and pace-based limitations might well be consistent with some type of gainful employment. Additionally, Plaintiff's daily activities (which, according to the ALJ, included home-schooling her children, but which Plaintiff said, in her testimony, consisted of their taking online classes through the Buckeye Local School District, without her having to teach or provide guidance for them) did not demonstrate the absence of speed or pace-based restrictions which would apply in a work setting. Consequently, a remand is necessary so that a more accurate assessment can be made of Plaintiff's residual functional capacity from a psychological standpoint.

### B.  Dr. Zilles

As noted above, Dr. Zilles treated Plaintiff for her knee condition and expressed an opinion as to her ability to do work-related functions. The ALJ gave that opinion only partial weight, accepting Dr. Zilles' findings as to Plaintiff's ability

to lift and carry, to crawl and balance, and to sit. He rejected other limitations. Plaintiff argues that the ALJ did not specifically acknowledge Dr. Zilles to be a treating source and did not engage in the proper mode of analysis for such sources, thus rendering the ALJ's opinion essentially unreviewable.

This is what the ALJ had to say about Dr. Zilles' opinion:

> The opinion of the claimant's orthopedic surgeon, Michael Zilles, M.D., has also been considered but only given partial weight.... Great weight is given to his opinion that the claimant can lift and carry up to 20 pounds occasionally and 10 pounds frequently, cannot crawl, can occasionally balance, and can sit at least 6 hours in an 8 hour workday, and these limitations have been accommodated in the above residual functional capacity.... These limitations are supported by the objective findings and examinations. However, little weight is given to the opinion that the claimant can only stand 2 hours, walk 2 hours, and never climb stairs or ramps, stoop, kneel, or crouch.... These limitations appear an overestimate of the claimant's limitations when viewed with the examinations that show adequate range of motion in the lower extremities, good muscle tone, 5/5 strength, no weakness or atrophy, and no edema in the lower extremities. It also appears inconsistent with the claimant's activities of daily living that are not significantly limited.... Also, Dr. Zilles did not cite to the specific objective findings that he used to support his opinion, which makes it less persuasive. Further, his opinion that the claimant can return to her past work as a delivery driver (as long as she is not taking narcotic medications) is given little weight, as the undersigned has added environmental limitations that preclude this work....

(Tr. 17).

The Commissioner counters by arguing that the ALJ clearly understood that Dr. Zilles was a treating source, and that the analysis in the administrative decision is both consistent with the regulatory requirements of 20 C.F.R. §404.1527(c) and supported by the evidence. The Commissioner also contends that the reasons given are sufficiently articulated and constitute

-12-

good reasons for rejecting the more restrictive aspects of Dr. Zilles' opinion.

The Court agrees with the Commissioner's position on this issue.  Although the ALJ did not use the phrase "treating source," he followed the proper method of analysis, determining that less than controlling weight should be given to some of Dr. Zilles' views because they were not supported by the medical evidence - in particular, Dr. Zilles' own findings, and were inconsistent with various other aspects of the record, including the fact that Dr. Zilles' actually released Plaintiff to return to work.  Plaintiff does not argue that these reasons lacked support in the record.  Even if a number of the restrictions imposed by Dr. Zilles might have limited Plaintiff to a more sedentary occupation, the vocational expert testified that Plaintiff could do a significant number of sedentary jobs.  Any error in the analysis of Dr. Zilles' opinion is therefore harmless, and this issue need not be revisited on remand unless Plaintiff presents new and material evidence which might alter the ALJ's decision.

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be sustained to the extent that the case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper

objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

/s/ Terence P. Kemp
United States Magistrate Judge